UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

SAMUEL L WAIT,

          Petitioner,

          v.                    CAUSE NO.: 3:17-CV-464-PPS-MGG

WARDEN,[1]

          Respondent.

OPINION AND ORDER

Samuel L. Wait was found guilty in an Indiana state court of four counts of child

molestation involving four acts of sexual abuse of a seven-year-old child. The child, S.S.,

was the daughter of Wait's on-again, off-again girlfriend. Representing himself, Wait

now seeks habeas corpus relief from those four convictions and the 110-year sentence

handed down by an Elkhart County judge.  Wait's principal contention is that he

received ineffective assistance of counsel at trial and on appeal in violation of the Sixth

Amendment.  Various Indiana courts have rejected his claims, and now he brings them

to federal court.  Because the Indiana courts' treatment of Wait's ineffective assistance of

counsel claims did not involve an unreasonable application of clearly established

federal law, as decided by the United States Supreme Court, his petition will be denied.

---

[1] The Respondent's name was changed from Superintendent to Warden pursuant
to Indiana Code § 11-8-2-7.

## Background

In deciding the petition, I must presume the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). It is Wait's burden to rebut this presumption with clear and convincing evidence. *Id*. Here are the facts as recounted by the Court of Appeals of Indiana:

> In March 2006, Heather Statts began a relationship with Wait. At that time, she was living in Ohio with S.S., her seven-year-old daughter. In June 2006, Statts and. S.S. relocated to live with Wait in his camper. In late August 2006, they moved to a house in New Paris.
>
> After they moved to New Paris, Wait committed multiple acts of sexual abuse against S.S. He penetrated her vagina with his finger and his penis, penetrated her anus with his penis, and, on a separate day, inserted his penis into her mouth. On another day, Wait forced S.S. to take her clothes off and "hump" his penis. S.S. saw a tattoo on Wait's penis of a red and green snake, the existence of which was stipulated to by the parties. Wait told S.S. that if she ever told anyone "that he touched her in her naughty places that he would hurt her."
>
> Statts's relationship with Wait deteriorated, and Statts and S.S. moved out of the New Paris home and returned to Ohio at the end of October 2006. But Statts and Wait resumed their relationship the following month, at which time Statts and S.S. returned to Indiana to live with Wait in Goshen. Approximately two months thereafter, S.S. told a friend's mother about the abuse, and the mother reported it to the authorities. *Wait v. State*, No. 20A03-0904-CR-282, 2009 WL 3199127, at *1 (Ind. Ct. App. Oct. 7, 2009). On August 29, 2007, the State charged Wait with four counts of class A felony child molesting, and on December 31, 2008, the State alleged Wait to be an habitual offender and a repeat sexual offender. On January 13, 2009, Wait's jury trial took place. During the trial, the State orally moved to amend the dates in the charging information; the trial court denied that motion. The jury found Wait guilty as charged and Wait later admitted to being an habitual offender and repeat sexual offender.
>
> On February 12, 2009, the trial court imposed forty-year sentences on each of the four convictions, with three to be served concurrently and one to be served consecutively. The trial court enhanced the sentences by thirty

> years in light of Wait's status as an habitual offender, for an aggregate
> sentence of 110 years.
>
> Wait appealed, challenging the sufficiency of the evidence to support
> multiple convictions of child molesting and the imposition of consecutive
> sentences. This Court affirmed Wait's conviction and sentence. Id. Wait
> then filed a petition for post-conviction relief. The post-conviction court
> denied Wait's petition.

*State v. Wait*, No. 20A03-1512-PC-2304, slip op. at *2-3 (Ind. Ct. App. Jan. 13,

2017); ECF 8-11.

What is not discussed in this description of the evidence is the fact that S.S.'s

testimony did not stand on its own. Her mother testified and corroborated her

testimony to some extent. More importantly, S.S.'s credibility was bolstered by the

testimony of Dr. Martina Green McGowan, a gynecologist, who testified at Wait's trial.

Trial Tr. pp. 222-240. Dr. McGowan conducted a genital examination of S.S. and

concluded that S.S. had been vaginally penetrated on multiple occasions. *Id*. at 229-232.

And while Dr. McGowan conceded that the penetration could have occurred in other

ways, she believed that sexual intercourse was "the most likely way." *Id*. at 235.

On appeal from the denial of his post-conviction petition, Wait argued that his

trial, appellate and post-conviction counsel were all ineffective. ECF 8-11 at 3-13. The

Indiana Court of Appeals affirmed the denial of his post-conviction petition. Id. at 13.

Wait sought transfer to the Indiana Supreme Court, where he challenged four things: (1)

whether his sentence violated the ex post facto clause; (2) whether Indiana's post-

conviction rules create a right to counsel in a post-conviction proceeding; (3) whether

the prosecutor's vouching statements made during closing argument constituted a

fundamental error; and (4) whether his trial counsel was ineffective for not objecting to the prosecutor's vouching statements made during closing argument. ECF 14-1. On April 27, 2017, the Indiana Supreme Court denied transfer. ECF 8-15.

Wait next moved on to federal court where he filed the petition for writ of habeas corpus that is now before the court. He raises twelve grounds for relief based upon ineffective assistance of trial counsel, appellate counsel and post-conviction counsel. ECF 1 at 3-13. For simplicity, I will follow the same ordering as the parties have followed. In Ground One, he claims trial counsel was ineffective for failing to conduct professional interviews of available alibi witnesses. In Ground Two, he alleges trial counsel was ineffective for failing to object to vouching statements made by the prosecutor. In Ground Three, he argues trial counsel was ineffective for failing to depose available witnesses. In Ground Four, he asserts trial counsel was ineffective for allowing Wait to admit to being a repeat sex offender. In Ground Five, Wait claims trial counsel was ineffective for failing to object to the court adjudicating him a credit restricted felon. In Ground Six, he alleges trial counsel was ineffective for failing to argue for acquittal on the habitual offender charge. In Ground Seven, he argues trial counsel was ineffective for failing to timely file his motion for specifics to challenge the charging information. In Ground Eight, he asserts that appellate counsel was ineffective for failing to file a petition to transfer. In Ground Nine, he argues appellate counsel was ineffective for failing to raise the issue that trial counsel allowed Wait to plead guilty to being a repeat sex offender. In Ground Ten, he alleges appellate counsel was ineffective for failing to raise "numerous acts of misconduct in vouching and bolstering for the

testimony and credibility of Wait's accuse." In Ground Eleven, he argues post-conviction counsel was ineffective for agreeing that any double jeopardy issue was waived. And, in Ground Twelve, he asserts post-conviction counsel was ineffective because he did not raise everything argued in Wait's post-conviction relief petition.

## Procedural Default

Anyone who has spent anytime considering habeas corpus petitions under section 2254 knows how bewildering they can be from a procedural point of view. Before I can even consider the merits of any of Wait's contentions, I must ensure that his claims aren't subject to dismissal under the doctrine that goes by the obtuse name "procedural default." 28 U.S.C. § 2254(b)(1)(A). Under this system, prisoners, who often pursue these claims *pro se*, must navigate a labyrinth that is more puzzlingly than a Rubik's Cube. Mess up somewhere along the way, and poof goes your claim. This case presents a good illustration. Indeed, the respondent argues that ten of the twelve grounds raised in Wait's petition are procedurally defaulted. So this is where I'll start.

First, the respondent argues that seven of Wait's grounds - One, Three, Seven, Eight, Nine, Eleven and Twelve - are procedurally defaulted because he never presented them to the Indiana Supreme Court. ECF 8 at 7. It is true that "a state prisoner must exhaust his remedies in state court before seeking relief in federal court," which requires the petitioner include his claims in "one complete round of the State's established appellate review process." *Snow*, 880 F.3d at 864 (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). This means "the petitioner must raise the issue at each and every level in the state court system." *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir.

2004). A petitioner "who has exhausted his state court remedies without properly asserting his federal claim at each level of state review has procedurally defaulted that claim." *Id.* at 1026.

Wait never sought transfer to the Indiana Supreme Court on direct appeal. ECF 8-2. And, on collateral review, Wait did not raise any of these grounds to the Indiana Supreme Court in his post-conviction transfer petition.[2] In his traverse, Wait concedes that he did not raise Grounds One, Three or Seven and acknowledges that he does not intend to move forward with those grounds here. ECF 12-1 at 9. But he does argue that Grounds Eight, Nine, Eleven and Twelve are not procedurally defaulted because "he raised them in his post-conviction appeal." *Id.* It is true that Wait did raise these grounds on appeal before the Court of Appeals of Indiana. ECF 8-8. The problem is that he did not go on to raise these grounds in his petition for transfer before the Indiana Supreme Court. *See* ECF 14-1. Again, he was required to raise these grounds to the Indiana Supreme Court before he can bring them here. *Lewis*, 390 F. 3d 1026. And because he did not, they are procedurally defaulted.

---

[2] To be specific, Wait did not argue that his trial counsel was ineffective for failing to conduct professional interviews of available alibi witnesses, as he does here in Ground One; that trial counsel was ineffective for failing to depose available witnesses, as he does in Ground Three; that trial counsel was ineffective for failing to timely file his motion for specifics to challenge the charging information, as he does in Ground Seven; that appellate counsel was ineffective for failing to file a petition to transfer, as he does in Ground Eight; that appellate counsel was ineffective for failing to raise an issue about trial counsel allowing Wait to plead guilty to being a repeat sex offender, as he does in Ground Nine; that post-conviction counsel was ineffective for agreeing that any double jeopardy issue was waived, as he does in Ground Eleven; or that post-conviction counsel was ineffective because he did not raise everything argued in Wait's post-conviction relief petition, as he does in Ground Twelve.

Next, the respondent argues that three more of Wait's claims – numbers Four, Five, and Six - were not fully and fairly presented to the Indiana Supreme Court. ECF 8 at 10. To avoid procedural default, a habeas petitioner must fully and fairly present his federal claims to the state courts. *Boyko v. Parke*, 259 F.3d 781, 788 (7th Cir. 2001). This is another trap for habeas petitioners that I alluded to earlier. Here's what it means: "Fair presentment requires the petitioner to give the state courts a meaningful opportunity to pass upon the substance of the claims later presented in federal court." *Id.* (quoting *Rodriguez v. Scillia*, 193 F.3d 913, 916 (7th Cir. 1999)). Fair presentment "does not require a hypertechnical congruence between the claims made in the federal and state courts; it merely requires that the factual and legal substance remain the same." *Anderson v. Brevik*, 471 F.3d 811, 814–15 (7th Cir. 2006) (citing *Boyko*, 259 F.3d at 788). But it does require "the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings." *Lewis*, 390 F.3d at 1025 (internal quotations and citations omitted).

Here, Wait's petition to transfer did not include claims that trial counsel was ineffective for allowing Wait to admit to being a repeat sex offender (Ground Four); failing to object to the court adjudicating Wait a credit restricted felon (Ground Five); or failing to argue for acquittal on the habitual offender charge (Ground Six). Instead, Wait raised a freestanding claim that the "post-conviction court failed to follow existing law when it determined the trial court did not abuse its discretion and in finding that he was a Repeat Sex Offender and a Credit Restricted Felon because such finding represents an ex post fact application of the statute." ECF 14-1 at 5-8.

To determine whether Wait has fairly presented Grounds Four, Five and Six to the Indiana Supreme Court I look deeper than examining just the name or title of the claim. When determining whether a claim has been fairly presented to the State courts as a federal claim, I must consider:

> 1) whether the petitioner relied on federal cases that engage in a constitutional analysis; 2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; 3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and 4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation.

*Anderson v. Benik*, 471 F.3d 811, 815 (7th Cir. 2006).

Upon review of the relevant section of Wait's petition to transfer – where he challenged the trial court's findings that he was a repeat sex offender, a credit restricted felon and a habitual offender - he did not rely on federal cases that engage in a Sixth Amendment analysis. Second, nowhere in that section did he rely on state cases which apply a Sixth Amendment analysis to similar facts. Third, Wait did not frame this claim to the Indiana Supreme Court with terms so particular as to call to mind any Sixth Amendment ineffective assistance of trial counsel claim. Indeed, he does not even use the term "ineffective assistance of trial counsel" in his discussion. And, fourth, Wait did not allege a pattern of facts that call to mind Sixth Amendment principles. ECF 14-1 at 5-9.

Wait's rejoinder is that he *did* raise an ineffective assistance of counsel claim – albeit in other parts of his petition to transfer. For example, he directs me to page 14 of his petition to transfer. ECF 12-1 at 12. But page 14 is simply the conclusion section.

There, he asks for relief claiming he "received ineffective assistance of both his trial and appellate and post conviction counsels as argued herein . . .." ECF 14-1 at 14. But the only ineffective assistance of trial counsel that Wait argued in his petition surrounded his trial counsel not objecting to the improper vouching comments made by the prosecutor in closing arguments. *Id*. at 13.

Next, Wait points out that he cited to cases that discussed ineffective assistance of counsel. ECF 12-1 at 14. But again, that was done in entirely different section of his petition, where he argued that Indiana should revisit its standard for effective post-conviction counsel and that trial counsel was ineffective for failing to object to the prosecutor's vouching statements during closing argument. ECF 14-1 at 11-13. The case citations in those unrelated sections of the petition to transfer did nothing to alert the Indiana Supreme Court to any claim that trial counsel was ineffective for allowing Wait to admit to being a repeat sex offender (Ground Four), for failing to object to the court adjudicating Wait a credit restricted felon (Ground Five) or failing to argue for acquittal on the habitual offender charge (Ground Six).

Wait also points out that in the order denying transfer the Indiana Supreme Court noted that it had reviewed the appellate record. ECF 12-1 at 12. It appears Wait is arguing that since the Indiana Supreme Court was aware of his prior arguments raised to the Court of Appeals of Indiana, he should be excused from having to raise those claims to the Indiana Supreme Court. That is not the case. The fact that the Indiana Supreme Court may have been aware of the arguments Wait made to the Indiana Court of Appeals did not relieve Wait of the obligation to raise his claims to the Indiana

Supreme Court. *See Boerckel*, 526 U.S. at 848 (holding petitioner procedurally defaulted when "federal habeas petition raised three claims that he had pressed before the Appellate Court of Illinois, but that he had not included in his petition for leave to appeal to the Illinois Supreme Court").

Ultimately, I cannot find that he alerted the Indiana Supreme Court to the ineffective assistance claims he brings in Grounds Four, Five and Six. *Perruquet v. Briley*, 390 F.3d 505, 519 (7th Cir. 2004). Since Wait did not fully and fairly present these claims through one full round of state court review, the state courts were not given an "opportunity to act" on them. *Thomas*, 822 F.3d at 384. Thus, Grounds Four, Five and Six are procedurally defaulted.

A habeas petitioner can overcome a procedural default by showing both cause for failing to abide by state procedural rules and a resulting prejudice from that failure. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977); *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008), *cert. denied*, 129 S. Ct. 2382 (2009). Cause sufficient to excuse procedural default is defined as "some objective factor external to the defense" which prevented a petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier*, 477 U.S. 478, 492 (1986). There is nothing in Wait's petition or traverse that would satisfy cause and prejudice.

In his petition, Wait claimed to have raised each of his grounds to the Indiana Supreme Court. ECF 1 at 6, 10, 13. In response to the petition, the respondent pointed out that he did not. ECF 36 at 13, 14. So, in his traverse, Wait has changed his tune and argues – seemingly, for the first time - that the state court's page limit on petitions to

transfer is sufficient cause to excuse his default. ECF 12-1 at 15-16. He points out that the Indiana Rules of Appellate Procedure allowed up to thirty pages for his appellate brief, but only ten pages for his petition to transfer. See Ind. R. App. P. 44(D). Wait claims that "there was no possible way he could effectively transfer his entire arguments and citing's into his Petition to Transfer without omitting parts." ECF at 17. This is not convincing.

It is true that Wait had less pages to draft his petition than he did for his appellate brief. However, that alone is not sufficient to show cause. *See Weeks v. Angelone*, 176 F.3d 249, 272 (4th Cir. 1999) (noting that "it would be nonsensical" to hold a "reasonable and consistently applied state procedural rule" to constitute cause); *see also Whitehead v. Harrington*, Case No. 14-cv-4118, 2017 WL 4699241 (N.D. Ill. Oct. 19, 2017) (holding that page limit imposed by state court rules did not amount to cause for failing to raise an argument to the state courts). Regardless, if Wait truly needed more space to make arguments, he could have requested leave to file an oversized brief. Ind. R. App. P. 44(B). He does not claim to have ever requested leave to file an oversized brief or that such a request was denied. Moreover, it does not appear as though the page limit was the real culprit for Wait not raising his ineffective assistance claims to the Indiana Supreme Court. Instead, it was that he simply chose to raise freestanding claims rather than the ineffective assistance claims he raised to the court of appeals. As such, I cannot find that anything external to Wait was the reason for the procedural default.

In sum, Wait has not shown cause for his failure to raise these claims in the State courts. Wait's failure to establish cause is enough to end the cause and prejudice

inquiry. *Murray*, 477 U.S. 496 (noting that the cause and prejudice test is "in the conjunctive").

A habeas petitioner may also overcome a procedural default by establishing that the court's refusal to consider a defaulted claim on the merits would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman*, 501 U.S. at 750. Under this narrow exception, the petitioner must establish that "a constitutional violation has resulted in the conviction of one who is actually innocent of the crime." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). A petitioner who asserts actual innocence "must *demonstrate* innocence; the burden is his, not the state's . . .." *Buie v. McAdory*, 341 F.3d 623, 626-27 (7th Cir. 2003) (emphasis in original). Wait does not argue that any such fundamental miscarriage of justice would occur. Therefore, I cannot reach these ten procedurally defaulted grounds on the merits.

### Wait's Claims That Are Not Procedurally Barred

Having worked our way through the procedural thicket that plagues habeas corpus litigation, it is now on to the merits of the claims that survive. But first, some basics about the standards that govern the decision making. Habeas corpus is an important error correction tool that helps to ensure the proper functioning of the criminal justice system. But the available relief is very limited. "Federal habeas review ... exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015) (quotations and citation omitted). Habeas relief can only be granted in one of two ways: if it is shown that the adjudication of the claim by the state court

resulted "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or if the state court decision was based "on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

This is a demanding standard that has been described by the Supreme Court as being "intentionally difficult to meet. We have explained that clearly established Federal law for purposes of §2254(d)(1) includes only the holdings . . . of this Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods*, 135 S. Ct. at 1376 (quotation marks and citations omitted). What this means is that to succeed on a habeas claim the petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Criminal defendants are entitled to a fair trial but not a perfect one. *Rose v. Clark*, 478 U.S. 570, 579 (1986). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter,* 562 U.S. 86, 101 (2011) (quotation marks omitted).

With these standards in mind I will now finally turn to the claims raised by Wait that have not been procedurally defaulted.

## A.  Ground Two – Ineffective Assistance of Trial Counsel

Wait contends that he received ineffective assistance of counsel when his trial attorney did not object to the prosecutor's alleged improper vouching statements made during closing argument. In talking about the victim, here's what the prosecutor said:

> Society does not want torn and bleeding children coming into this courtroom. What society wants is they want it to be caught before it gets to S.S.'s stage.

> * * *

> To say that this child is lying means you have to come up with some reason as to why the child would lie …. There's no way this child could even begin to create this conspiracy. And what did the mother say? The mother said that, sure, you know, she's a kid, she does lie about little things, but the big stuff she's not lying about. … You've got to have a good reason to discount this child. … And what mother puts a child through this when it's not a custody fight? … There is no reason for a mother or a child to come forward and create a lie like this. … Is she trying to get attention? … I don't think this attention was the type that a child would be looking for that she would not have back out of this to walk away from this attention. So it's not a lie, seeking attention; it's simply the truth.

> * * *

> There's nothing to be gained by coming forward with what is apparently going to be argued a lie. … All it did was cause incredible emotional harm in being able to talk about this. … [T]here's simply no logical explanation for it other than it happened.

Trial Tr. pp. 380-384. Wait's attorney did not object to these statements during trial and Wait's appellate attorney did not raise these statements as an issue

during his direct appeal. However, these statements - and counsel's failure to object to them - are front and center in this habeas petition.

Wait raised this issue in the state courts. But for some reason it is not the question the Court of Appeals of Indiana answered. ECF 8-11 at 9-10. Instead of engaging in a typical *Strickland* analysis - focusing on whether defense counsel provided deficient performance and whether there was any resulting prejudice - the court of appeals analyzed whether the prosecutor's statements amounted to a claim of prosecutorial misconduct. While the Court did make some rote statements about the *Strickland* standard, it went on to analyze the claim as one of prosecutorial misconduct. Here's what the court said:

> When reviewing a claim of prosecutorial misconduct, we determine (1) whether the prosecutor engaged in misconduct, and, if so (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he should not have been subjected. The gravity of the peril turns on the probable persuasive effect of the misconduct on the jury's decision, not on the degree of the impropriety of the conduct. For prosecutorial misconduct to be fundamental error, it must make a fair trial impossible or amount to clearly blatant violations of basic and elementary principles of due process and present an undeniable and substantial potential for harm.

ECF 8-11 at 7.

The court of appeals concluded that the prosecutor's statements constituted improper vouching. ECF 8-11 at 9. The court found "that the prosecutor's statements that S.S. and her mother had no reason to lie; that the jury would have to find a reason for S.S. to lie or to discount her story; and that the jury should believe S.S. because 'it's simply the truth' and that 'there's simply no logical explanation for it other than it

happened' were not based on evidence at trial." *Id*. The court further determined that

"the prosecutor's assertion that 'there's nothing to be gained by coming forward with'

the allegation because it would only 'cause incredible emotional harm in being able to

talk about this' was also inappropriate." *Id*.

Despite this, the court concluded that the prosecutor's statements were not

prejudicial.

> However, we cannot say that this misconduct placed Wait in a position of
> grave peril. During the trial, the jury heard the testimony of S.S.,
> who testified that Wait penetrated her in three different ways, forced her to
> perform fellatio, and forced her to remove her clothes and "hump" his
> penis. It is unlikely that the jury found Wait guilty of child molesting for a
> reason other than the evidence introduced at trial. Any harm done by the
> prosecutor's assertions in the closing argument was not substantial, and
> did not result in fundamental error. As a result, we find that the post-
> conviction court did not err by concluding that Wait did not receive the
> ineffective assistance of counsel.

*Id.* at 10.

Since the Court of Appeals of Indiana never addressed the performance prong, I

will do so *de novo. See Thomas v. Clements*, 789 F.3d 760, 767 (7th Cir. 2015). Deficient

performance is established by showing that defense counsel's representation "fell below

on objective standard of reasonableness." *Harrington*, 562 U.S. 86, 104 (2011). From my

review of the trial transcripts, I do not see that defense counsel's failure to object could

be considered constitutionally deficient performance. The prosecutor's statements about

S.S.'s credibility during closing argument walked a fine line between proper and

improper vouching. While "a prosecutor may not state his or her personal opinion

regarding the credibility of a witness during trial," *Thomas v. State*, 965 N.E.2d 70, 77

(Ind. Ct. App. 2012), a prosecutor "may comment on the credibility of a witness as long as the assertions are based on reasons which arise from the evidence. *Cooper v. State*, 854 N.E.2d 831, 836 (Ind. 2006). It's a close call here.

But the issue to be determined in this case is not necessarily whether the prosecutor's comments were improper. The issue is whether the defense attorney's *failure to object* to those comments was objectively unreasonable. It was not. The statements made by the prosecuting attorney during closing argument were not so obviously improper that Wait's attorney can be deemed deficient for failing to object to them. As I already mentioned, the prosecutor's statements do not present a clear case of improper vouching, such as when a prosecutor makes an assertion that he personally believes the victim. *United States v. Verse*, 490 F.2d 280, 282 (7th Cir. 1973). And even if defense counsel believed the prosecutor was making improper comments during closing argument, he may have had strategic reasons for not objecting. Lawyers run a risk of appearing obstreperous by objecting during closing argument. They may also be drawing attention to a point that may otherwise be ignored by the jury. It's a quintessential judgment call to be made by the trial lawyer. It should be second-guessed by a judge deciding a habeas petition several years later only if the strategic decision was utterly unreasonable. *See Yu Tian Vi v. United States*, 648 F.3d 524, 531 (7th Cir. 2011) (acknowledging that trial counsel makes valid strategic decisions in deciding whether to make a trial objection); *see also United States v. Caver* 470 F.3d 220, 244 (6th Cir. 2006) ("[N]ot drawing attention to [a] statement may be perfectly sound from a tactical standpoint."). Ultimately, I do not see that defense counsel's failure to object to the

prosecutor's statements in closing argument was objectively unreasonable. *See Strickland*, 466 U.S. at 466 (noting performance is deficient when "representation f[alls] below an objective standard of reasonableness").

This could end the inquiry. *Rastafari v. Anderson*, 278 F.3d 673, 688 (7th Cir. 2002) (noting that the *Strickland* standard is formulated in the conjunctive, requiring the petitioner to make a showing on both deficient conduct and prejudice). But, I will nevertheless go on to analyze the prejudice prong. The Court of Appeals of Indiana found the prosecutor's statements did not prejudice Wait because a jury would have likely convicted him in any event. Although I understand that the merits of a prosecutorial misconduct claim are intertwined with the potential prejudice of defense counsel not objecting to the prosecutor's statements, the appellate court's analysis of prejudice was almost entirely couched in terms of state law, rather than the Sixth Amendment. Nevertheless, the appellate court's findings and conclusion – placed in the *Strickland* context - was not unreasonable. *McNary,* 708 F.3d at 914. At bottom, the issue before me is whether Wait's trial counsel not objecting to the prosecutor's vouching statements made during closing argument produced a significant likelihood that an innocent person has been convicted. *Davis v. Ayala*, 135 S.Ct. 2187, 2197-98 (2015) (noting that actual prejudice requires there be "grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict."); *Howard v. O'Sullivan*, 185 F.3d 721, 723-24 (7th Cir. 1999) (noting that to meet the burden of being denied a right to a fundamentally fair trial requires a significant likelihood that an innocent person has been convicted).

To judge the effect of the prosecutor's statements, I am to look at the "seriousness of the prosecutor's misconduct, whether the jury was instructed to disregard arguments not supported by the evidence, whether the defense had an opportunity to respond to the statements, whether the defense 'invited' the comments, and the strength supporting the conviction. The strength of the evidence against the defendant is often decisive." *United States v. Alexander*, 741 F.3d 866, 871 (7th Cir. 2014) (citations omitted).

In weighing these factors, I find that the prosecutor's vouching statements – and defense counsel's failure to object to them – did not produce a significant likelihood that an innocent person has been convicted. Even though the prosecutor's comments were neither invited nor rebutted by defense counsel, they weren't over the top. Even if we were to assume that the prosecutor's statements were over the line, any potential harm from those comments was dampened because the jury was instructed that "comments of counsel are not evidence." Trial Tr. p. 400. Regardless, what is decisive here is the same thing that is decisive in most cases; the weight of the evidence.

The weight of the evidence in this case is significant. The victim's testimony is compelling with respect to the graphic nature of the conduct described and its consistency and detail. At trial, S.S. testified that Wait penetrated her vagina with his finger and his penis. Trial Tr. pp. 250-258. She also testified that he penetrated her anus with his penis. *Id.* at pp. 264-65. She stated that on a separate occasion he inserted his penis into her mouth. *Id.* at pp. 260-263. At trial, she also described a tattoo that she saw on Wait's penis of a red and green snake, *id.* at p. 256, which Wait stipulated was accurate. State's Ex. 2. A reasonable jury could have convicted Wait based on this

testimony alone. *See Carter v. State*, 754 N.E.2d 877, 880 (Ind. 2001) (holding that a conviction for child molestation can rest solely on the victim's uncorroborated testimony). But, as noted above, S.S.'s testimony did not stand on its own. It was supported by her mother's testimony as well as the testimony of Dr. Martina Green McGowan, a gynecologist. Trial Tr. pp. 222-240. Recall that Dr. McGowan conducted a genital examination of S.S. and concluded that S.S. had been vaginally penetrated on multiple occasions, *id*. at 229-232, and she believed that sexual intercourse was "the most likely way." *Id*. at 235.

Ultimately, Wait has not established that he was prejudiced by trial counsel's failure to object to the prosecutor's statements during closing argument. *Strickland*, 466 U.S. at 694 (noting that to establish prejudice, a petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."). Thus, this ground alleging ineffective assistance of trial counsel is not a basis for habeas relief. *See e.g. Rodriguez v. Scillia*, 193 F.3d 920 (7th Cir. 1999) (noting that improper comments by a prosecutor in closing argument must be considered in light of the entire record).

**B.     Ground Ten – Ineffective Assistance of Appellate Counsel**

In Ground Ten, Wait claims that that he received ineffective assistance of appellate counsel. He complains that appellate counsel did not raise on direct appeal that the prosecutor made improper vouching statements during closing argument. The Court of Appeals of Indiana found that appellate counsel was not ineffective for failing

to raise this issue. ECF 8-11 at 11. It reasoned, that "we have already found no fundamental error [in the prosecutor's vouching statements made during closing argument], so Wait's appellate counsel did not err in raising it on appeal." *Id.* Again, the court of appeals focused its inquiry on the state law claim of prosecutorial misconduct rather than a Sixth Amendment ineffective assistance of counsel claim. It reasoned that since the prosecutor's statements during closing argument did not amount to fundamental error and were not prejudicial, appellate counsel would not have succeeded on that argument. Although its analysis was not quite in the right place, I cannot say that its decision – placed in the *Strickland* context - was unreasonable.

Indeed, the reasons I found Wait not to be prejudiced by trial counsel failing to object to the prosecutor's statements during closing argument also apply to appellate counsel not raising the issue on appeal. Simply put, Wait's appellate counsel would not have been successful on that claim. And counsel's failure to raise a meritless claim on appeal is not ineffective. *Warren v. Baenen*, 712 F.3d 1090, 1104 (7th Cir. 2013). Therefore, he is not entitled to habeas relief on this ground either.

### Certificate of Appealability

Pursuant to Section 2254 Habeas Corpus Rule 11, I must grant or deny a certificate of appealability. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v.*

*McDaniel*, 529 U.S. 473, 484 (2000). For the reasons explained in this opinion for denying habeas corpus relief, there is no basis for encouraging Wait to proceed further. Thus, a certificate of appealability must be denied.

## Conclusion

Accordingly, the habeas petition (ECF 1) is DISMISSED and a certificate of appealability is DENIED. Furthermore, the clerk is DIRECTED to edit the docket changing the respondent to Warden pursuant to Indiana Code § 11-8-2-7.

SO ORDERED on December 12, 2018.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT